# WILLIAM F. CAMERON and JOHN L. SLOAT, Respondents, v. ROBERT SEAMAN and HENRY A. SEAMAN, Appellants.

*Trustees — of corporations formed under chap. 40, Laws of 1848 — liability of — Failure to publish annual reports — Extending time of payment of debt — effect of.*

A failure to publish the annual report required by the act of February 17th, 1848, entitled "An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes," creates the same liability, as a failure to make the report or to file it would have done. It was the intention of the legislature to make it the duty of the trustees to cause all those acts to be done.

Although the statute is a penal one, and will not be extended in its operation by construction, yet the same rules of interpretation apply to it as to statutes not penal. The legislative will governs in all cases.

The extent of the liability is "for all debts then existing and for all that shall be contracted before such report shall be made," and it falls upon those in office when the default occurred, although contracted before they became trustees. The liability of the trustees is not affected by the recovery of judgment against the corporation, or by extending the time for the payment of the debt without their consent.

APPEAL from a judgment entered upon the decision of the justice, on a trial by the court without a jury.

This action was brought against the defendants to recover a debt due to the plaintiffs from the Shenandoah Mining Company (a corporation organized under the general act of the legislature in relation to manufacturing and mining corporations, passed February 17th, 1848), for failure on the part of the trustees of said company to file or publish the annual report required by section 12 of said act, within twenty days from January 1st, 1874, or within twenty days from January 1, 1875. The place where the business of the company was carried on was East Fishkill, Dutchess county. The newspaper published nearest said place of business was the Fishkill Journal, published at Fishkill, in said county. The report of the said trustees for 1874 was filed in the clerk's office on the twenty-second day of January, and published in the Poughkeepsie Eagle, a newspaper published in the city of Poughkeepsie, on the twenty-fourth day of January, and was not published in any other

newspaper. In so filing and publishing, the trustees intended in good faith to comply with the statute concerning the making, filing and publishing of the annual reports of said companies. The report of said company for 1875 was not signed by any persons who were trustees of the company. The persons who signed said report having been elected trustees in June, 1873, and at the election held in September, 1874, a new board had been elected, none of whom had made any report for January, 1875. The defendant Henry A. Seaman was elected a trustee in September, 1874, and claimed on the trial that he had resigned his office. The court decided that he was still a trustee. The plaintiffs' claim, for which this suit was brought, was for lumber sold the company, between January 29, 1873, and August 20, 1873. On March 26, 1874, the plaintiffs took the notes of the company at four months, for the whole amount of the claim then unpaid, which notes the plaintiffs procured to be discounted at the bank, and credited the company with the proceeds, thereby balancing the account. When the notes fell due the plaintiffs took them up, and afterwards obtained judgment thereon against the company.

*E. A. Brewster,* for the appellants. By this statute, the making of the report is the only act which is required to be done within the twenty days, and for the failure to do which the penalty is imposed upon the trustees. The publishing and filing are acts to be done after the report is made. No time is absolutely fixed within which they must be done. It may be impracticable, in certain cases, to publish the report within the twenty days, as where the nearest newspaper is only issued monthly, and the publication day is after the twenty-first of the month. So as to the filing, the report may have to be sent to a distant clerk's office, and require several days for its transmission. Yet the trustees have the whole twenty days within which to make their report. Both the publication and the filing are matters not wholly within the control of the trustees. In the one case the printer and in the other the county clerk, must do the act. Therefore, when the statute comes to impose the penalty upon the trustees, it is when they shall fail to do so, that is, fail to do what they are required to do, viz., to make the report, and not when they shall fail to

cause to be done, acts, which from their nature must be done by others than themselves. This construction is further supported by the concluding words by which they are made liable for debts contracted before the report shall be made; not made, filed and published. The publication in the Poughkeepsie newspaper was sufficient. The company had a "place where the business of said company was carried on," in the city of Poughkeepsie. The fact that some one published a paper in the little village of Fishkill (a little nearer to the iron mine of the company than Poughkeepsie), which paper was so obscure that the trustees of this company never heard of it, cannot have the unreasonable and illogical effect of making the trustees personally liable for all the debts of the company. By taking the notes of the company on time, having them discounted, and balancing the account, the plaintiffs canceled the original debt, and waived any claim they may have then had against the trustees. (*Fisher* v. *Marvin*, 47 Barb., 159.) Their liability, if any, was of the nature of a suretyship. (*Moss* v. *McCullough*, 5 Hill, 133; *Miller* v. *White*, 50 N. Y., 137, 141, 142.) And the giving time to the principal debtor released them. (*Hart* v. *Hudson*, 6 Duer, 294.) There was no ground for recovery against the defendant Henry A. Seaman. He was not a trustee in January, 1874. Henry A. Seaman, as soon as he heard of the action of that meeting refused to serve, and never did serve as a trustee. The old board of trustees held over. He had the right to resign, from which it follows he had the right not to accept. (*Chandler* v. *Hoag*, 3 Hun, 613; since affirmed by Court of Appeals.) Even if Henry A. Seaman was duly elected, and bound to be a trustee *nolens volens*, yet he is not liable in this case, because the debt was contracted before he became a trustee. (*Shaler Quarry Co.* v. *Bliss*, 27 N. Y., 297; *Garrison* v. *Howe*, 17 id., 458; *Boughton* v. *Otis*, 21 id., 261.)

*Cassedy & Brown*, for the respondent. The company failed to comply with the statute in January, 1874. The report of 1874 was not filed in the clerk's office until January twenty-second. East Fishkill was named in the certificate of incorporation as the town where the business of the company was carried on, and was the place of business of the company, within the meaning of the

act of the legislature. (*McHarg* v. *Eastman*, 4 Robt., 635; *West. Transportation Co.* v. *Scheu*, 19 N. Y., 408; *Oswego Starch Co.* v. *Dolloway*, 21 id., 453, 454.) There was no newspaper published in East Fishkill, and the Fishkill Journal was the newspaper published nearest the place of business of the company. They were required to publish the report in this newspaper. They had no more right to publish in the Poughkeepsie Eagle than in a newspaper in Buffalo or New York city. Their failure to comply with the law made "all the trustees jointly and severally liable for all debts of the company then existing." (*Garrison* v. *Howe*, 17 N. Y., 458; *Shaler & Hall Quarry Co.* v. *Bliss*, 27 id., 297; *Boughton* v. *Otis*, 21 id., 261; *McHarg* v. *Eastman*, 7 Robt., 137; *Shaler & Hall Quarry Co.* v. *Brewster*, 10 Abb. Pr., 467; *Deming* v. *Pulleston*, 55 N. Y., 655; *Miller* v. *White*, 8 Abb. Pr. [N. S.], 55.) It is no answer for the defendants to say that the report was made within the twenty days. The law intended the report for some purpose, and what purpose could be accomplished by permitting the trustees to sign the report and then keep it in their pocket for an indefinite period. The language of the statute is, "shall make a report * * * which shall be published * * * and filed * * * and if any of said companies fail so to do the trustees shall be liable," etc. The failure to which the penalty is attached is not only the making but the publishing and filing. The debt due to the plaintiffs was an existing debt on the 21st day of January, 1874. The lumber had all been sold and delivered prior to September 1st, 1873, and had never been paid for. It is true the plaintiffs had taken the company's draft or acceptance for a part of the debt, but this was only the promise of the company to pay at a future day. It did not extinguish or pay the debt; and the taking of the note of the company for the debt does not relieve the trustees. (*Jones* v. *Barlow*, 6 Jones & Spencer, 162; *Deming* v. *Pulleston*, 3 id., 309; S. C., 55 N. Y., 655; *McHarg* v. *Eastman*, 7 Robt., 137.) In *Jones* v. *Barlow*, after the default of filing the report, the plaintiff took ten notes of the company for his debt, one of which was not due at the commencement of the action. The court held that the remedy against the trustees is distinct and concurrent, and not inconsistent with the other remedies in favor of the creditors against either corporation and stockholder. He

may take notes of the company or sue the company or stockholders, and if he does not collect can still sue the trustees. It was claimed on the trial that the defendant Henry A. Seaman was only liable for debts contracted while he was trustee. There is nothing in the law that warrants such a construction, and the cases in the Court of Appeals effectually dispose of such a defense. (*Garrison* v. *Howe*, 17 N. Y., 458; *Boughton* v. *Otis*, 21 id., 261; *Shaler & Hall Quarry Co.* v. *Bliss*, 27 id., 297; *Miller* v. *White*, 8 Abb. Pr. [N. S.], 55.) In *Boughton* v. *Otis*, Judge COMSTOCK says (page 264): " The general policy of the act is immunity from personal liability, but this is attended by certain conditions demanding the personal observance of the trustees. A single case may occur where successive boards may be liable for the same debts, and that is where there are successive defaults in January The liability of the trustees for a failure to make a report is in the nature of a penalty, and the penalty is all the debts of the company then existing. The trustees are not relieved by the recovery of a judgment against the company, or by the creditor's taking the company's note, and the statute of limitations commences to run anew upon every suc cessive default. (*Miller* v. *White*, 2 Abb. Pr. [N. S.], 61; *Shaler & Hall Quarry Co.* v. *Bliss*, 27 N. Y., 297; *Squire* v. *Brown*, 22 How., 35; *Merchants' Bank of New York* v. *Bliss*, 35 N. Y., 412; *McHarg* v. *Eastman*, 7 Robt., 137.) Nor is it any defense that the trustees acted in good faith. ( *Whitney Arms Co.* v. *Barlow*, 6 Jones & Spencer, 554.)

GILBERT, J. :

None of the positions assumed by the counsel for the plaintiffs are tenable. It is not necessary to the determination of this case to decide whether the act of 1848 (chap. 40, § 12,) requires the annual report to be published and filed, as well as made, within twenty days from the first day of January, inasmuch as there was a failure to comply with the requirement in respect to publication at any time. Such failure devolved the same liability upon the defendants as a failure to make the report or to file it would have done. But we think the intention of the legislature was to make it the duty of the trustees to cause all those acts to be done within the twenty days. It is only by such an interpretation that the

object of the statute, namely, to convey information of the affairs of the corporation, in the mode prescribed, can be accomplished. The making of the report alone certainly would give no knowledge of its contents to persons not privy to the making of it. Hence, it must be filed, in order that persons interested may have access to it, and the object of the publication is to facilitate the same purpose. The language of the statute, too, is not ambiguous. It imposes the duty of making, publishing and filing the report, and the liability declared is for a failure so to do. Clearly, therefore, the making of the report only would not save the liability. It must be published and filed also, and that must be done within the time limited for the making of it, for as the liability attaches upon the failure to do all those acts, the only reasonable inference is, that the limitation of time applies to all. Although the statute is a penal one, and will not be extended in its operation by construction, yet the same rules of interpretation apply to it as to statutes not penal. The legislative will governs in all cases.

The extent of the liability is, "for all debts then existing, and for all that shall be contracted before such report shall be made," and it falls upon those in office when the default occurred. It matters not that the debts were contracted before the officers became trustees, if they existed when the default occurred. (*Boughton* v. *Otis*, 21 N. Y., 261; *Shaler, etc., Co.* v. *Bliss*, 27 id., 297.) Nor is the liability of the trustees affected by the recovery of a judgment against the corporation, or by extending the time for the payment of the debt without their consent.

They are not parties to the contract between the corporation and the plaintiffs, nor does their liability depend on their membership in the corporation. It is imposed by the statute as a penalty for the non-performance of a duty thereby enjoined on them, the extent of the penalty being fixed by the amount of the corporate debts at the time the default occurred, and before the duty shall have been performed. The equitable principles growing out of the relations which parties to a contract sustain among themselves, therefore, have no application to such a case. (*Corning* v. *McCullough*, 1 Comst., 47; *Moss* v. *Averill*, 10 N. Y., 450; *Harger* v. *McCullough*, 2 Den., 119; *Bank* v. *Ibbotson*, 24 Wend., 473.)

The election held in September, 1874, at which the defendant

Henry A. Seaman was chosen a trustee, appears to have been regular in all respects. No election having taken place in June, 1874, it was properly held at the next regular meeting, which occurred on the second Friday in September following; and the board of trustees had power to fix Newburgh as the place of meeting for that purpose. Mr. Seaman testified that, on receiving notice of his election from Mr. Haines, the president of the company, he told him he could not serve. Haines testified that Seaman was a trustee in January, 1875, and the judge, at the trial, found that he was a trustee, and refused to find that he notified Haines that he would not serve. There appears to be no sufficient ground for reversing the decision of the judge upon this question of fact. It is, at least, doubtful whether there was an effectual refusal to serve, or resignation of the office of trustee. (Ang. & Ames on Corp., § 433.) But we need not pass on that question.

The judgment must be affirmed.

Present — GILBERT and DYKMAN, JJ.; BARNARD, P. J., not sitting.

Judgment affirmed with costs.